# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JAMES ROBINSON, SID #3234398     *

Plaintiff     *

v     *     Civil Action No. ELH-18-2360

WEXFORD HEALTH, *et al.*,     *

Defendants     *

   ***

## MEMORANDUM

The above-captioned case was opened on July 31, 2018, upon receipt of a civil rights Complaint filed by James Robinson, a prisoner at North Branch Correctional Institution ("NBCI"). Robinson alleged deliberate indifference to his medical needs. ECF 1. Robinson also filed motions for leave to proceed in forma pauperis, for appointment of counsel, and for a temporary restraining order or a preliminary injunction. ECF 2; ECF 3; ECF 4.

On August 3, 2018, the Court directed the Office of the Maryland Attorney General to show cause why injunctive relief should not be granted in Robinson's favor. ECF 5. The Attorney General filed a Response (ECF 11), with exhibits. Subsequently, Robinson filed an Amended Complaint, which is substantially similar to his original Complaint. ECF 16. Robinson also filed a second motion for leave to proceed in forma pauperis and for a temporary restraining order or preliminary injunction. ECF 17; ECF 20. In addition, he filed a motion for production of documents. ECF 19.

No hearing is necessary to resolve these motions. *See* Local Rule 105.6.

### I. Motions for Injunctive Relief (ECF 4; ECF 20)

**A. Background**

In June 2016, Robinson was the victim of a serious assault at the hands of another inmate,

which resulted in head injuries and a brief hospitalization. ECF 1 at 3. Robinson asserts that he was and continues to be provided with inadequate medical treatment to address the injuries that he suffered during the assault. *Id.* In particular, Robinson states

> I been putting in sick calls for over a whole year now about the same issues saying that [I']m having problems with something feeling like it move inside my head, nerves twitching too much, alot of dizziness, blurry v[i]sion, bones cracking way more than they suppose[d] to, I be having migraines, snot dropping out of my nose, barely being able to hear, my swollen bruised eyes, weight loss, teeth wearing down, gums overlapping [,] ears, nose & throat sucking in make me choke and hard to swallow, dick & balls getting small and not getting hard and etc but what have they actually done about it?

*Id.* (some capitalization altered).

In Robinson's initial motion for a temporary restraining order or a preliminary injunction (ECF 4, "PI Motion"), he asks that defendants: (1) be enjoined "from not trying to personally get [him] to attend [his] medical & dental appointments before signing any more refusal slips denying [him] medical and dental care," (2) be required to reschedule his medical and dental appointments "within that same week if [Defendants] do sign a refusal slip"; (3) send him to a hospital for treatment and surgery "to remove all the scars and fix the broken bones in [his] face, uplift [his] gums[, and] repair [his] teeth with some perm[a]nent platinum teeth"; (4) transfer him from NBCI to Jessup Correctional Institution; and (5) specially wrap his food because Robinson has been "having too many problems with the [correctional officers] and feed up workers in this prison and alot of [his] food don't be looking right." ECF 4.

Robinson's second motion for a temporary restraining order or a preliminary injunction (ECF 20, "TRO Motion") is substantially similar to his PI Motion. But, it contains additional requests. Robinson asks that defendants: (6) "cancel the life insurance policy they made on [him] in the end 2016"; (7) "transfer [him] out of the whole Cumberland region to a prison where at leas[t] half the staff there is black African Americans,"; (8) remove him from "lock up"; and

2

(9) order an outside medical provider to give him "thorough blood work ASAP" because Robinson does not trust the staff at the prison.

Defendants oppose Robinson's PI Motion, asserting that Robinson is frequently seen by medical providers and that such medical providers have "been unable to substantiate any actual physical injury to treat"; that it is suspected that the true cause for Robinson's complaints is psychological rather than physical; that some delay in Robinson's treatment is a consequence of his repeated disciplinary infractions and resulting placement on staff alert; and that Robinson has refused treatment on multiple occasions. ECF 11 at 4-5, 13-16. Defendants were not ordered to respond to Robinson's TRO Motion.

**B. Discussion**

A preliminary injunction is distinguished from a temporary restraining order ("TRO") only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor* v. *Wolf Run Mining Co.,* 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). A preliminary injunction cannot issue without notice to the nonmovant. *See* Fed. R. Civ. P. 65(a)(1). Because Defendants have responded to the PI Motion, it will be construed as one for a preliminary injunction. Because Defendants have not been ordered to respond to the TRO Motion, it will be treated as a Motion for a Temporary Restraining Order. Nonetheless, because the same standard applies to both types of motions, the Court will jointly address Robinson's various requests.

A preliminary injunction or temporary restraining order is an "extraordinary and drastic remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). A party seeking such relief must establish each of the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance

of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Di Biase v. SPX Corp.*, 872 F.3d 224, 229-30 (4th Cir. 2017). The requirement that one establish a likelihood of suffering irreparable harm is not satisfied by suggesting a mere possibility of such harm. *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *De Simone v. VSL Pharm., Inc.*, 133 F. Supp. 3d 776, 799 (D. Md. 2015) ("The irreparable harm to be suffered must be neither remote nor speculative, but actual and imminent." (internal quotation marks omitted)).

*1. Attending Medical Appointments*

First, the Court addresses Robinson's request for a preliminary injunction enjoining Defendants from failing to actively ensure that he attends his medical appointments. Robinson alleges that Defendants sign release of responsibility forms declining treatment without consulting with him first. ECF 20. Although this allegation is troubling, and the Court does not condone such action, Robinson's certified medical records indicate that he has been receiving and continues to receive medical treatment for his repeated complaints. For example, between January 1, 2018 and filing of the instant action on July 25, 2018, Robinson has been seen at sick call appointments for his assault-related complaints an average of once a month. *See* ECF 11-1 at 174, 184, 188, 194, 215, 235, 238. In addition, he has received physical therapy due to complaints about jaw and dental pain. *Id.* at 190, 193. Robinson has repeatedly been absent from scheduled physical therapy appointments because he was on staff alert, *see id.* at 203, 208, 214. Nevertheless, he has also undergone x-rays regarding his complaints. *See id.* at 279-81 (x-

rays evaluating face and neck, which revealed no abnormalities). Given the continuing medical treatment that Robinson is receiving for his repeated complaints, albeit on a less frequent basis than Robinson would like, the Court concludes that he is unable to demonstrate that he is likely to suffer irreparable harm in the absence of a preliminary injunction. Therefore, the Court will deny Robinson's PI motion as to this claim.

*2. Rescheduling Missed Medical Appointments*

Turning to Robinson's request for an injunction requiring Defendants to reschedule a missed appointment for later the same week, the Court concludes that Robinson cannot establish that the balance of equities tip in his favor or that it would be in the public interest. The medical providers are responsible for the care of numerous other prisoners, and imposing a bright-line rule regarding rescheduling Robinson's appointments would be detrimental to other prisoners, who also need medical care.

*3. Treatment and Surgery at Hospital*

Next, Robinson requests that Defendants send him to a hospital for treatment and surgery "to remove all the scars and fix the broken bones in [his] face, uplift [his] gums[, and] repair [his] teeth with some perm[a]nent platinum teeth." ECF 3. As to the vast majority of this request, it is facially apparent that Robinson cannot establish a likelihood of suffering irreparable harm in the absence of preliminary relief or that it would be in the public interest. For example, the Court cannot discern, and Robinson fails to explain, what harm will befall him if his scars are not immediately removed or his gums promptly "uplift[ed]." And while basic dental treatment for inmates may be in the public interest, implanting platinum teeth at the taxpayers' expense is undoubtedly not.

As to Robinson's requests for immediate hospital treatment and surgery, only the demand

for the immediate repair of broken facial bones appears to be the type of injury that could warrant a preliminary injunction. However, Robinson's certified medical records show that, the day before he filed the instant action, he was given a facial x-ray that revealed "no evidence of an acute fracture, dislocation, or subluxation." ECF 11-1 at 280 (refuting Robinson's assertion that his facial bones are broken and in need of immediate repair). Thus, Robinson has failed to make the requisite showing for an injunction as to his request for immediate hospitalization and surgery.

*4. Transfer to Different Prison*

As to Robinson's requests regarding prison transfer (i.e., that he be transferred to Jessup Correctional Institution and/or that he be transferred from the Cumberland region to an institution with a staff of particular demographics), he cannot demonstrate that he is likely to succeed on the merits of such claims because an inmate has no constitutional right to be confined to a particular institution. *Meachum v. Fano*, 427 U.S. 215, 223 (1976); *see also Olim v. Waukinekona*, 461 U.S. 238, 245 (1983) (". . . an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . .").[1]

---

[1] Robinson insists that he should have been transferred already, referencing "the Intrasystem Transfer summary papers from 2.24.17, 7.13.17, 9.14.17 and etc." ECF 20 at 2. Robinson misconstrues these transfer papers, which do not authorize, require, or suggest that Robinson be permanently transferred. *See* ECF 11-1 at 90-91, 125-27, 139-41. Indeed, other evidence in the record, and Robinson's publically available criminal proceedings, suggest that each of these transfers was undertaken for the temporary purpose of allowing Robinson to attend court or medical proceedings. *See id.* at 93 (nurse visit dated 2/28/2017, stating that reason for visit was Robinson's "[r]eturn from medical or court trip"); 128 (medical notes regarding a sick call that was scheduled for July 14, 2017, stating "[p]atient out on court trip. Will have re-scheduled"); *State v. Robinson*, Case No. 21-K-16-052522 (Wash. Cnty. Cir. Court), *available at* http://casesearch.courts.state.md.us/casesearch/ (reporting that Robinson had a hearing in this case within four days of each of the dates of the transfer summaries Robinson references).

In any event, even if Robinson had correctly characterized these transfer papers, he would not be entitled to an injunction ordering his transfer. A prison official's plan to transfer an

*5. Removal from Lock Up*

Robinson, who states that he has been on "lock up" (presumably referring to disciplinary segregation, *see* ECF 11-2 at 5 (stating that Robinson restriction status is "Dis Seg")) for more than two years with "over 3 more years to do," requests that he be immediately released from this type of confinement. ECF 20 at 2. Robinson does not provide details about the conditions of his confinement, but instead broadly claims that "no lock up time [is] suppose[d] to exceed a year[;] it deprive inmate from their civilize nec[]essity." *Id*.

No TRO is warranted, as Robinson has failed to demonstrate that he likely to succeed on the merits of such a claim. "Placement in disciplinary segregation, alone, does not impose an atypical or significant hardship triggering due process protections." *Johnson v. Gayflor*, No. GJH-16-0944, 2017 WL 3671159, at *4 (D. Md. Aug. 24, 2017). Because disciplinary segregation, without more allegations, does not implicate due process protections (i.e., a condition that may be imposed, but only after the appropriate procedural steps are followed), by extension, it cannot constitute cruel and unusual punishment (i.e., a condition that may not be imposed under any circumstance). To be sure, the particular circumstances of Robinson's confinement could implicate constitutional rights. But, he has not alleged any details suggesting this is the case. He has also failed to identify any irreparable harm that disciplinary segregation is causing him.

*6. Other requests*

Robinson is not entitled to injunctive relief as to his requests that his food be specially wrapped because he fears that someone is tampering with his food or that he be sent to an outside provider for blood work because he does not trust the results of the prison medical provider's

---

inmate does not create a legally enforceable obligation for such transfer.

tests. Because both of these requests are grounded in nothing more than paranoid speculation, Robinson cannot make the requisite showing of a likelihood of irreparable harm in the absence of immediate Court intervention. *See Winter*, 555 U.S. at 22; *De Simone*, 133 F. Supp. 3d at 799.

For the same reason, Robinson's request regarding the life insurance policy must fail. Indeed, this claim is even more speculative than the food and blood test claims; Robinson's TRO Motion fails to suggest the irreparable harm that he seeks to avert.[2]

## II. Motions for Leave to Proceed In Forma Pauperis (ECF 2; ECF 17)

This Court issued an Order requiring the finance officer at NBCI to file a verified inmate account statement reflecting the average balance and deposits to Robinson's account. ECF 7. The statement has been received and indicates a zero balance in the account. ECF 10. Therefore, Robinson's initial motion for leave to proceed in forma pauperis (ECF 2) shall be granted and the initial partial payment shall be waived. Robinson's second motion for leave to proceed in forma pauperis (ECF 17) shall be denied, as moot.

## III. Motion for Appointment of Counsel (ECF 3)

Also pending is Robinson's Motion for Appointment of Counsel. ECF 3. A pro se prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017). A federal district court judge's power to appoint counsel under

---

[2] In his prior case that was voluntarily dismissed, *Robinson v. Wexford*, ELH-17-1467, Robinson stated that prison officials made him sign a life insurance policy and wondered "is these people trying to capitalize off something happening to me?" ELH-17-1467, ECF 30-1 at 3. As proof that he was required to sign a life insurance policy, Robinson said "see the top of the consultation paper from 8.18.16"; *id.,* and later said "see the top part of the consultation paper from 10.13.16 by Krista Bilak." *Id.*, ECF 36 at 2. However, both of the documents Robinson references merely indicate that the "3rd Party Insurance" responsible for paying for Robinson's audiology consultations is "Maryland DPSCS." ELH-18-2360, ECF 11-1 at 49; there is no reference to life insurance. Further, Robinson's medical records reveal identical language on a consultation form from October 2014, while he was housed in a different institution. *Id.* at 379. This belies the notion that the supposed "life insurance policy" was a consequence of the June 2016 assault.

8

28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *See Evans*, 713 F. App'x at 170; *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon consideration of the motions and previous filings by Robinson, the Court finds that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Robinson under § 1915(e)(1).

### IV. Motion for Production of Documents (ECF 19)

Finally, Robinson has filed a Motion for Production of Documents pursuant to Fed. R. Civ. P. 34. Discovery may not commence before Defendants have answered or otherwise responded to the Complaint, and then only after a Scheduling Order has been issued by this Court. *See* Local Rule 104.4 (D. Md. 2016). At the current stage of litigation, Robinson is not entitled to engage in discovery.

### V. Conclusion

For the reasons articulated above, Plaintiff's First Motion for Leave to Proceed In Forma Pauperis (ECF 2) is granted and his remaining Motions (ECF 3, 4, 17, 19, 20) are denied. The Amended Complaint shall be provided to Defendants, who shall respond in accordance with Rule 12(a) of the Federal Rules of Civil Procedure and *In re State Prisoner Litigation*, Misc. No. 00-308, Standing Order 2012-01 (D. Md. 2012).

9

A separate Order follows.

October 15, 2018                                           /s/
Date                                                            Ellen L. Hollander
                                                               United States District Judge